UNITED STATES of America

v.

William Holloway DAVIS.

No. CR 86–93.

United States District Court,
W.D. Pennsylvania.

Dec. 30, 1986.

Bradley Barbin, Asst. U.S. Atty., for plaintiff.

Frank Arcuri, Asst. Federal Public Defender, for defendant.

HISTORY, STATUTORY FINDINGS OF FACT AND/OR LAW, DISCUSSION AND ORDER IN REGARD TO DEFENDANT WILLIAM HALLOWAY DAVIS' MOTION FOR A BAIL BOND PENDING THE OUTCOME OF HIS APPEAL TO THE UNITED STATES COURT OF APPEALS, THIRD CIRCUIT, FROM THE ORDER OF THIS COURT WHICH REVOKED HIS PROBATION

SIMMONS, District Judge.

*History Of This Case*

The Defendant in this case, William Halloway Davis was the subject of a five count indictment involving the Defendant's alleged possession of a number of checks which said Defendant allegedly knew had been stolen from the mail. This indictment was filed with this Court on April 28, 1986, at Criminal No. 86–93.

On May 5, 1986, the Defendant appeared before a Federal Magistrate and pled not guilty. The Defendant had been previously placed on a $5000.00 unsecured bond. On June 12, 1986, the Defendant appeared before this Court and pursuant to a plea agreement with the U.S. Attorney, withdrew his plea of not guilty as to Count Two of said indictment and pled guilty to the same. The other Four Counts of said indictment upon motion of the Assistant United States Attorney were dismissed by this Court.

Based upon the Defendant's plea of guilty, to Count Two of said indictment, this Court formally adjudicated Defendant guilty and entered a judgment of conviction against the Defendant and on August 5, 1986, sentenced him as follows:

The defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of four years; and on condition that the defendant be confined in a jail-type or treatment institution, such as the Community Treatment Center on the South Side for a period of 90 days, the execution of the remainder of the sentence of imprisonment is hereby suspended and the defendant is placed on probation for a period of five years to

commence upon the defendant's release from confinement upon the following terms and conditions:

1. That he comply with all local, state and federal rules and laws;

2. That he comply with the rules and regulations of the probation department;

3. That he make restitution in the sum of $513.30, payable at the rate of $20/month;

4. That the defendant be involved in a work release program and maintain his job;

5. Special assessment of $50 to be paid at the rate of $5/month;

6. That the defendant make payments of at least $5/month towards the fines and costs owed to the Allegheny County Courts. The Court recommended that the defendant be housed at the South Side Community Treatment Center so that he can participate in a work release program.

Mr. Davis was incarcerated at the Goodwill Community Treatment Center located on the South Side section of Pittsburgh *and was released from the CTC on November 7, 1986, and entered upon the service of his three years of probation.* At no time was the defendant in prison or under the direct or indirect jurisdiction of the United States Bureau of Prisons while at the Treatment Center, and up to and including the date of his probation revocation hearing he was personally living in this Federal Judicial District under the jurisdiction of this Court. (NOTE: Attached hereto is a transcript of the sentencing proceeding in this case.)

On November 6, 1986, a petition for probation revocation action was filed with regard to the above captioned case and thereafter on November 13, 1986, a hearing was held before this Court.

The Defendant was charged with having violated the terms of his commitment to the treatment center as follows:

1. The defendant admitted that he falsely told the officials at the treatment center that he was signing out to his place of employment on 10/4/86, when as a matter of fact he spent the day helping his father-in-law move his household furniture, etc.

2. The defendant admittedly was guilty of a curfew violation on 11/1/86, when he was due back to the Center from his place of employment at 2:15 P.M., and where he in fact did not arrive back at the Center until 6:55 P.M. over four hours later than the required time.

Based on the admitted violations of the rules of the Center and the conditions of his sentence, this Court concluded on November 13, 1986, during the period of his probation, after a full hearing, and by clear and convincing evidence, the truth of which was admitted by the defendant, that the defendant had violated the terms and conditions of his probation, and thereupon this Court revoked said probation, and sentenced defendant to the custody of the Attorney General or his authorized representative for imprisonment for a period of four years.

On November 18, 1986, the defendant filed a notice of appeal from the Order of this Court revoking the probation of the defendant. On November 19, 1986, the defendant moved this Court for bail and stay of sentence pending the outcome of the appeal from this Court's Order revoking defendant's probation.

Because it seemed clear to this Judge beyond doubt that Rule 9(b) of the Rules of Appellate Procedure [as is clearly set forth in the caption of said Rule 9, Section (b)" in bold face type, "(b) *Release Pending Appeal from a Judgment of Conviction*"], did not apply in this case since the defendant is *not* appealing from a Judgment of Conviction or the terms and/or conditions of sentence, but rather is only appealing from a revocation of his probation, this Court on November 20, 1986, summarily refused defendant's application for bail pending his first appeal.

The Order of this Court denying bail also was appealed to the Honorable Court of Appeals and this Court was directed by the

Appeals Court to comply with Rule 9(b) and 18 U.S.Code Section 3143(b).

A bail hearing was held on December 24, 1986, and the following findings were made by this Court:

## FINDING NO. ONE

*Findings of Fact required by Title 18 Section 3143(b)(1) of the United States Code and Discussion.*

This Court finds that the defendant has failed to provide clear and convincing evidence that he is not likely to flee if he is released on bail. To the contrary, the uncontested evidence clearly shows that the defendant has failed recently on at least two occasions to observe time limits set for his return to the Community Treatment Center and this conduct gives credence to the possibility that the defendant may flee if given an opportunity to do so.

## FINDING NO. TWO

*Findings Required by Title 18 Section 3143(b)(2) of the United States Code and Discussion.*

It is the finding of this District Court that this appeal to the Circuit Court of Appeals is for the purpose of delay and said appeal does *not* raise a substantial question of law or fact that is likely to result in a reversal of this Court's Order which revoked the defendant's probation.

In the first place this Court knows of no authority which authorized the granting of bail to a defendant who is appealing an order revoking his probation and who has been adjudicated guilty based on an uncontested legally proper plea of guilty. As heretofore noted, Rule 9(b) of the Appellate Rules of Procedure dealing with bail pending appeal has to do only with cases involving an appeal from a judgment of conviction which is not this case at all.

In any event, it is the judgment of this Court that there is no "substantial" or "fairly debatable" question of law likely to result in a reversal of this Court's Order revoking the defendant's probation. (See

*U.S. v. Smith* 793 F.2d 85, 1986 (3rd Cir. 1986), Third Circuit)

18 U.S.Code Section 3651 grants this Court the power to impose probation. 18 U.S.Code Section 3653 states that "at any time within the probation period ... the Court may issue a warrant" for the probationer's arrest. After a hearing the Court may revoke the probation. Further, 18 U.S.C. Section 3651 provides that "The Court may revoke or modify any condition of probation or may change the period of probation".

In this case the defendant's three year probation began on November 7, 1986, and he was released from official custody at that time. On November 13, 1986, during his actual period of probation *and after* he was released from the Treatment Center, a probation violation hearing was held and defendant's probation was revoked.

At *no* time ever did the Bureau of Prisons and/or the Attorney General have personal jurisdiction over this defendant. At all relevant times the defendant has been a resident of the United States Judicial District, known and designated as the Western District of Pennsylvania.

At no relevant time has this Court interfered in any way with the parole and clemency powers vested in the executive branch as was the topic of discussion in *Affronti v. United States* 350 U.S. 79, 83, 76 S.Ct. 171, 173, 100 L.Ed. 62 (1955). As aforestated, all action taken by this Court in regard to the revocation of the defendant's probation was taken during the defendant's official period of probation in this Court's judicial district and at a time when the executive branch of our government had no control of any kind whatsoever over the defendant.

This Court suggests that it would be absurd and very dangerous for it to be held by an Appellate Court that this Court is powerless to control the on-going probation of a Federal Defendant residing in this Court's jurisdictional District in spite of the specific Congressional grant of authority to this Court to do so and in spite of the fact, that other than this Court, there is no other available governmental entity of any kind in a position to control or sanction the

defendant for his failure to observe the rules of the Community Treatment Center and the conditions of his probation as ordered by this Court.

This matter has been conclusively put to rest by your Honorable Court in the case of *United States v. Veatch,* 792 F.2d 48 (3rd Cir.1986) where this District Court was clearly permitted to revoke the probation of defendant Veatch for improper activities of the defendant Veatch that occurred before the beginning of the probationary time period.

In the case at bar this defendant Davis' probation likewise was revoked for his activities that occurred before the beginning of the probationary period.

The defendant's attorney has failed to point to any overriding public policy or to any constitutional denial of rights that might be occasioned by the revocation of defendant Davis' probation and denial of bail in these circumstances where Davis has pled guilty to the crime charged.

In fact, the record will show that this Court went out of its way to treat the defendant fairly and humanely. Although this defendant was a second offender, this Court placed this man in a work release program to protect his employment; this work release program was only to last for 90 days; the defendant was kept in the community close to his family, children and wife; the defendant was given a week off from the Treatment Center to care for his sick wife and children; defendant was given a second chance to "make good" after he failed to honor the curfew on the first occasion at the Treatment Center; defendant was given a chance to make restitution in small payments of $20.00 per month with no fine and no costs; defendant was given a chance to avoid the consequence of his state parole violation by making $5.00 per month payments to Allegheny County.

This defendant has taken improper and unfair advantage of both the State and Federal Judicial System. He does not appreciate kind and humane treatment. Defendant was duly warned on the record as to what he could expect if he violated the conditions of his sentence, and he must now suffer the consequences of his actions.

Our system of criminal justice will never work to deter crime if it approves the release of this defendant on bail while he is appealing a probation revocation order and after he has intelligently and voluntarily pled guilty to the offense in question and after he has admittedly on two occasions violated the sentencing orders of this Court. (See the sentencing transcript attached herewith)

To hold that there is no sanction available to this Court in this case where the executive branch admittedly has no jurisdiction to mete out appropriate sanctions, would be an open invitation for defendant Davis to figuratively "thumb" his nose at the judicial process, (which is what defendant Davis apparently has been doing successfully for much of his life.)

Clearly, in this Court's opinion, Davis' appeal of this Court's Order revoking his probation does not raise a substantial question of law or fact that is likely to result in a reversal of said Order and Davis' appeal is only for the purpose of delay.

Further, and, in any case, Davis as an admitted felon who has voluntarily and intelligently pled guilty to Count Two of the indictment as charged without an appeal of the same, is not entitled to bail on the findings of fact and conclusions of law made by this Court in this case.

## APPENDIX

### PROCEEDINGS

THE COURT: Mr. Davis, Mr. Arcuri and Mr. Barbin, come forth. This is the time and place set for a sentencing of William Halloway Davis, at docket number 86–93 criminal.

Preliminarily, Mr. Barbin, do you have anything to say about the situation?

MR. BARBIN: A few remarks. One, that upon review of the criminal record of the defendant, it appears the defendant has been in trouble for this type of offense before. That would be 1982 on a forgery offense.

Our position is he had one bite at the apple. This is the second bite and sterner measures should be taken than those taken by the Commonwealth.

Our final position is that we would ask the Court to take a long-arm look at the fact that the defendant has not paid his fines or restitutions imposed by the Commonwealth court in 1982.

Finally, if the court is not predisposed to put the defendant in jail for this offense, we think that an appropriate period of time, a short period of time, in that the defendant does have an apparent stable working relationship with the grocery store in the East Liberty area. We feel that it is absolutely necessary that Mr. Davis be put on some sort of long period of probation, so that this doesn't happen, at least, within the next five years. That is our position.

THE COURT: I think five years is the outside sentence for him; is it not?

MR. BARBIN: That is correct.

THE COURT: Mr. Arcuri?

MR. ARCURI: Well, Your Honor, I would point out that while he does have a prior for this type of offense, he was placed on three years probation. The presentence report does indicate there were no difficulties in supervision—supervising him. It would appear from the circumstances that do surround this case, that at the time that this offense was committed, that he was unemployed. Since that time, Your Honor—

THE COURT: That is no justification, is it? The fact that he is unemployed?

MR. ARCURI: No, Your Honor. I would think it would take to mitigate somewhat due to the fact that he had a family to take care of.

THE COURT: Well, you want—what about you, Mr. Davis? Do you want to say something on your own behalf?

THE DEFENDANT: Well, Judge, at the time like—

THE COURT: Before you start, it is no excuse to commit crimes to support your family. Go from there.

THE DEFENDANT: I understand that, Your Honor. But, I feel that I just made a mistake at the time because what I did I will accept any decision you are going to make, Your Honor. I feel that I am, you know, no threat to society in any way because I work with them every day. I feel that I am a pretty reliable person now that I am working steady. That I would be able to pay back the restitution. I might not be able to pay it back at one time. I will be able to pay back a certain sum of money out of my paychecks.

THE COURT: Is the probation man here?

Mr. Nardine, do we have a work release program that would be viable for a man working out here in East Liberty? Does the Allegheny County Jail work with the courts on that?

MR. NARDINE: I believe he could be put in the Community Treatment Center and they could work out something there.

THE COURT: A community treatment center?

MR. NARDINE: The Community Treatment Center on the South Side—Mr. Will.

THE COURT: So he could get to work every day?

MR. NARDINE: Yes, Your Honor.

THE COURT: All right. Mr. Arcuri, did you look over the presentence investigation report?

MR. ARCURI: Yes.

THE COURT: Did you go over it with the defendant?

MR. ARCURI: Yes.

THE COURT: This is your signature and his signature?

MR. ARCURI: Yes, Your Honor.

THE COURT: Mr. Davis, do you have any complaints about the presentence report?

THE DEFENDANT: No, Your Honor.

THE COURT: Let me say this to you: I think Mr. Barbin is correct. I have to go along with him. You see, they gave you a chance on a case like this. Now, we are not going to be severe with you, but you

have to start to learn that there has to be an end to this. You can't go through life stealing checks and cashing them; checks that belong to other people. Do you understand? I mean, it is not right.

The first time the system gives you a break but you don't accept a break. You figure you are going to get break after break after break. It just doesn't work that way. Especially, when you are coming down here to Federal Court. Because there has to be an end to it. And we are still going to try to help you. At least, to protect your employment.

Do you understand? But, you have to get some punishment to understand that if you keep doing this, it will get worse and worse and worse. You will end up in prison for a long period of time. Do you hear me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Society can't tolerate this type of activity on your part. See, especially when everybody is giving you a break and you don't accept the break and you go out and commit the same offense for the second time. You see, we just can't go along with that.

I guess, count one, you are going to move to dismiss that?

MR. BARBIN: At the time of the imposition of sentence we will dismiss all of that.

THE COURT: The Court will make the following sentence: and now this fifth day of August 1986, the defendant William Halloway Davis is adjudicated guilty, based upon his plea of guilty. It is the Order of this Court, that the defendant William Halloway Davis shall be committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of four years; and on the condition the defendant be confined in a jail type or treatment institution, such as the Community Treatment Center on the South Side, for a period of 90 days. The execution of the remainder of the sentence of imprisonment is suspended and the defendant is placed on probation for a period of five years.

Now, as a condition of probation, the defendant is to enter into a work release program so he can continue to work at his present employment.

The defendant is directed to make restitution in the amount of $513.30 and we are going to give you a payment schedule of $20.00 per month. You ought to be able to make that.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Over a period of five years. You have to pay at least twenty dollars a month; do you hear me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, in addition, you have to pay a special assessment of $50.00, which we will let you pay that at the rate of five dollars a month until that is paid off. So for $25.00 a month, you have to lay that aside, that money, and make sure you pay it.

Now, if you don't pay it, I will bring you back here and put you in jail for five years.

Do you hear me?

THE DEFENDANT: Yes.

THE COURT: If you want to go to prison for five years, play with me, and don't do what I request; do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, secondly, also, you should pay at least five dollars a month on that money that you owe the Allegheny County; do you understand that? That is not asking too much. Thirty dollars a month, follow me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You can live with that but you have to have the self-discipline to pay that money regularly; do you understand?

THE DEFENDANT: Yes.

THE COURT: Keep your nose clean. Don't go out stealing checks again and forging peoples' names. That is not fair to the other people, to steal from them. So you can live off of the backs of other people. That is not proper or just; is that right?

THE DEFENDANT: No, it isn't.

THE COURT: You have a high school education. You have a job now. You make $4.30 an hour.

THE DEFENDANT: It don't seem like it.

THE COURT: You work every day?

THE DEFENDANT: Yes, I do.

THE COURT: We want you to keep on working with your job. It is important for you to keep employed. You make arrangements with Mr. Nardine to see that some kind of arrangements are made so he can get to his work.

All right, Mr. Nardine?

MR. NARDINE: Yes, Your Honor.

THE COURT: All right, that would be that. That is the South Side Community Treatment Center that would be an appropriate place for him? All right?

MR. NARDINE: Yes.

THE COURT: We are trying to keep you in the community. We don't want to put you in prison; do you understand?

THE DEFENDANT: Yes.

THE COURT: You still have to suffer. You have to understand that you are being punished because you had a chance and you didn't accept the chance. You went right back out and did the same thing the second time; do you understand?

THE DEFENDANT: Yes.

THE COURT: I am telling you, if you come back in here, you are going to go away for five years; do you hear me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I am telling you—four years, I guess I said. So—

MR. BARBIN: Four.

THE COURT: Remember now, we warned you.

THE DEFENDANT: Yes.

THE COURT: Don't cry and moan and groan, if you get into any more trouble.

THE DEFENDANT: No.

THE COURT: Whose fault is it going to be?

THE DEFENDANT: It is going to be mine, Your Honor.

THE COURT: Your fault, exactly. We are giving you another chance. You will have to spend ninety days over at this South Side Community Treatment Center.

Another thing too, don't get tempted to run away or be a fugitive because that can cause you all kind of problems; do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do your ninety days, make your payments, keep your nose clean, be honest, obey all the laws and you are going to be all right; do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: But, on the other hand, if you go out and commit a lot of crime or you get back in the same type of crime that you have been into, even though you are not a danger to society—you are in fact a danger to society. You cost society a lot of money, a lot of inconvenience and trouble.

I am going to give you a chance now. If you accept it you will be better for it. If you don't accept it, you know what is going to happen. I am telling you right now; all right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So I think that is all that we can do at this point.

Do you want to make your motion?

MR. BARBIN: We move to dismiss counts one, three, four, five and six.

THE COURT: Your motion is granted.

MR. BARBIN: Thank you.

THE COURT: We are giving you a chance. Please accept it in the spirit in which it is given. That is all that I can do for you. The rest is up to you. I have you on a payment plan that I know you can live with. If you don't accept this and don't make your payments, and if you get yourself into more trouble; who will suffer?

THE DEFENDANT: I am, Your Honor.

THE COURT: You sure are. All right, that is it.

MR. ARCURI: Is he going to voluntarily report?

THE COURT: No, they ought to take him over there. Mr. Nardine, you sort of supervise this. He will sort of indicate what you are supposed to do and so on.

MR. ARCURI: All right.

THE COURT: He is right over here. Do you want to take him out there in the hall and explain to him, or wherever.

MR. NARDINE: I will contact the Community Treatment Center.

THE COURT: Take the gentleman down to the Marshal's office and Mr. Nardine will see him down there. You go down there too, Mr. Arcuri.

\* \* \*

### CERTIFICATE

I, Jordan Lilienthal, Official Reporter, do hereby certify the foregoing is a true and correct transcript made from my stenotype notes.